STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Goldschmid   }
             }
             }  Docket No. 91-6-01 Vtec
             }
             }

## Decision and Order

 Appellant Thomas Goldschmid appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Westminster granting Conditional Use Approval to Appellee-Applicant Flo Aeveia Magdalena, d/b/a Soul Support Systems, Inc.

 Appellant appeared and represented himself; other neighbors Carrie Gelfan, Michael Beh, David F. Walter, Frank Walter, Karen Walter, Marcia Wessels, Thomas Wessels, John Dixon, Linda Dixon, Tammy Kissell, Rebecca Nixon, Mike Collins, Alki Steriopoilos and Shannon McGough appeared as interested  parties and represented themselves; Appellee-Applicant appeared and represented herself[1]. Earlier in the proceedings, the Town of Westminster had appeared through Attorney David Gartenstein; however, as of the evidentiary hearing and the site visit, Town Manager Glenn Smith participated on behalf of the Town and Mr. Gartenstein did not participate. This matter was put on inactive status for a time while the parties attempted to resolve this dispute through mediation.

 An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties on a subsequent date. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

 Appellee-Applicant owns two parcels of property at the end of Daigel Road, a Class 3 unpaved public road, in the Rural Residential 5 zoning district of the Town of Westminster. Daigel Road widens into a turnaround suitable for the Town plow to maneuver on Appellee-Applicant= s property. One of Appellee-Applicant= s parcels of land is a 10.6-acre lot containing a large house, with the address of 626 Daigel Road. The adjacent lot, with the address of 647 Daigel Road, is a 124-acre[2] parcel containing a barn structure[3], diagonally across the turnaround from the house, and otherwise unimproved with permanent buildings. A proposed campsite and privy are located centrally within the 124-acre parcel, well away from the end of Daigel Road, with a walking trail leading from the house and barn to the campsite area. The 124-acre lot contains land generally uphill from and relatively remote from the Daigel Road neighbors, except that the barn, parking area and turnaround area are located at the top of a natural amphitheater facing the neighboring properties down Daigel Road. Activities involving drumming, music, or loud vocalizing occurring at the barn (when not fully enclosed), the parking area, or on the 10.6-acre house property, including in the field behind the house, are visible or audible from the properties of the Daigel Road neighbors. Activities involving drumming, music, or loud vocalizing occurring at the proposed campsite location on the 124-acre property are not visible or audible from the Daigel Road neighbors= properties.

 Daigel Road is an unpaved Class 3 Town road about two-thirds of a mile long, leading in a gentle S-curve uphill from Pine Banks Road, directly across from the Steriopoilos and McGough

property, past the neighbors= ten[4] driveways and ending at Appellee-Applicant=s properties. Although the lateral curves in the road are gentle, the grade of the road is relatively steep, with grades as much as 122 % to 152 % in certain stretches of the road. See Exhibit 8. The traveled way of the road is as narrow as approximately twelve feet in places, where it is difficult for two farm trucks to pass in opposite directions in the summer months. The combination of the narrow roadway, steep grades and curves results in limited visibility for vehicles traveling along the road to see vehicles emerging from the driveways or to see the approach of oncoming vehicles. These conditions are exacerbated by the accumulation of plowed snowbanks in the winter months. In the winter, the road does not function adequately as a two lane road; certain vehicles must back up to a driveway to allow other oncoming vehicles to pass. The residents and local delivery trucks are familiar with the road conditions and travel slowly along the road, looking out for the driveways. As it is a dead end road, there is no through traffic. The character of the area is rural and residential, with a mix of agricultural uses.

Since acquiring the property in 1994, Appellee-Applicant has operated educational programs[5] at the combined properties during various months of the year from April to October, and has received payment from the program participants for those programs, without having obtained zoning approval of this non-residential use of the property. The organization through which she provides these programs is a non-profit corporation.

The programs for adults generally involve groups of up to twelve participants and up to eight staff people, for a total of up to 20 people, but have involved as many as 36 people[6] for a period of three to four days in 1996. As described in Appellee-Applicant= s brochures (Exhibits C and D), these programs range from one-day, three-day, or five-day Soul Recognition journeys or experiences, to six-day or seven-day training workshops for those wishing to be certified as facilitators or to receive advanced training. The participants pay a fee for the program, exclusive of room and board, and are charged a separate fee for lunches and a separate fee for breakfast if they wish it. They have the option of camping on the land, staying at a nearby motel, or staying at Appellee-Applicant= s house. The vehicles coming to the property associated with these programs average half of the number of participants and staff for any given program. Generally, the people who stay on the land or at Appellee-Applicant= s house drive to the property the evening before the session begins, and leave the vehicle there during the whole program, leaving at the end of the last day or the following morning. The people, such as staff members, who live in the area, and the participants who opt to stay at nearby motels or bed-and-breakfast accommodations, drive to the property between 8:00 and 8:45 a.m., and leave the property between 9:30 and approximately 10:30 p.m. Car pool arrangements are made to minimize the number of vehicles used during the session for these people; however, they all do arrive and leave at approximately the same time of day.

The programs for children have been run as a single five-day residential summer camp program called EarthQuest, held since 1994 (except for 1999), and using the tipis for overnight accommodation. The automobile use associated with this program is similar to that of the adult sessions, as the staff and children stay at the site for the program session. However, in the summer of 2000, Appellee-Applicant rented the facility to the Vermont Wilderness School for use as a day camp in two sessions in July and August, the first session involving a group of twenty and the second session involving a group of eleven. Because the children were being brought to and picked up at the property daily, the first of these sessions involved much more traffic and noise than the adult or residential children= s camp sessions, and generated complaints from the neighbors. The staff of the second day camp session organized car pools from a parking lot elsewhere in town, which adequately reduced the daily traffic for that session.

In past years Appellee-Applicant has run a maximum of five programs in a year, or a maximum of 35 days of programs in a year, including the children=s camp. She uses the house for registration on arrival, for the preparation of meals, for lodging for some participants, and for

the participants= use of the two toilets in the house. Registration, the consumption of meals, and quiet program activities may be held in the barn once it is enclosed.

In the present application, Appellee-Applicant proposes to continue to conduct all of these programs, with the possible exception of the day camp as discussed below. She proposes to increase the number of potential program days to a maximum of ninety days of programs in a year, from May 1 through October 31[7] each year. She proposes to increase[8] the overnight campground area to provide overnight accommodations for up to fifty people. She does not propose any exterior lighting in the upper fields near the camping area, and proposes to shield or direct away from the neighbors any outdoor lighting in the parking area or along the path. She proposes not to schedule activities after 11 p.m. or before 7 a.m., but notes that vehicles may have to leave the property earlier than 7 a.m. to connect with flight times from Bradley Airport in Hartford, Connecticut. She proposes, but only if required by the Court, to restrict the number of events involving up to fifty participants to five per year, with the remainder of events having a maximum of 35 participants, with a maximum of twenty vehicles. Once participants have arrived, she encourages but does not require them to car pool from their off-site accommodations to the property, and to car pool for any travel off the property during the program period, to minimize traffic on Daigel Road. She requires those who will be staying in the tipis to arrive not later than 9 p.m. the night before the first day of the program. Those who are staying off the site are required to arrive by 8:45 a.m. each day, or by 8:00 a.m. if they will be eating breakfast at the house. The use of the property for up to 50 people with no limitation on vehicle use would generate an average of 25 vehicles, but could generate more, all of which could be traveling to the property within a single hour or two. Such a level of vehicle use would exceed the capacity[9] of Daigel Road safely to conduct traffic.

The adult program uses fall within the use categories of > campground= and > limited outdoor recreation,= which are conditional uses in this district. Accordingly, Appellee-Applicant applied for conditional use approval, which is the subject of the present appeal.

We must note that all the parties seemed confused about the change in use of the parcel, treating it as an all-or-nothing proposition that, if approved, would allow all types of campground use including that for recreational vehicles and for unlimited numbers of people. This is a misunderstanding of the way in which zoning regulations function in general. For uses in a > permitted use= category in a specific district, such as > residential,= it is true that an applicant has the right to build as big a house as he or she wishes, consistent with the other zoning regulations such as those regulating setbacks, sewage disposal, floodplain or ridgeline protection. However, by contrast, if a use category is designated as a > conditional use= category in a specific district, that designation merely entitles the applicants to apply for approval of a specific proposal within that use category. A particular parcel of land, for example, might adequately support the sewage disposal or the traffic generated by a four-unit apartment building, but not that generated by a forty-unit apartment building, even though both proposals fall within the use category of > multi-family dwelling.= Thus, in the present case, the fact that the use categories > campground= and > limited outdoor recreation= are allowed as conditional uses in this zoning district only means that Appellee-Applicant is entitled to apply for approval of a specific proposal within those categories. Approval of that specific proposal would not entitle an applicant to expand beyond the specific proposal without applying to the ZBA for an amendment to or expansion of the conditional use approval granted for that specific proposal.

Appellee-Applicant also applied to the Planning and Development Commission for site plan approval of this change in use, as required by ' 151.1of the Zoning Ordinance. She was granted site plan approval to A operate a campground/limited outdoor recreation facility from the residence at 626 Daigle Road.@ In connection with the site plan application, Appellee-Applicant proposed to use the facility five to six times a year with a maximum occupancy of 50 persons at any one time. We note that regardless of what is approved in this conditional use application, she does not have site plan approval for any use more intense than she applied for in that application.

The only site changes proposed or approved were the installation of three tipis and a privy[10], uphill and centrally within the 124-acre parcel. The site plan did not propose or require any landscaping or screening. No party appealed the site plan approval and it became final.

First of all, we must note what is not before the Court in this application. Appellee-Applicant does not have and has never applied for conditional use approval to provide lodging, meals or the use of toilet facilities to the participants in her programs at or in the house or elsewhere on the 10.6-acre house property. All she has is site plan approval of the placement of the tipis and privy on the 124-acre parcel, and to > operate= the programs from her residence, which can only refer to the office or management functions for the programs being operated by her and other residents of the house as a permitted-use home occupation. See ' 242.6(b)(5).

The use categories of > bed and breakfast= and > inn= are conditional uses in this zoning district. Appellee-Applicant is entitled to apply for conditional use approval of the use of the house as a > bed and breakfast= or > inn= use, or as another similar > use not provided for= under ' 241.9[11]. However, she has not made that application in the application for conditional use approval now before the Court. Until and unless she obtains such approval she may not offer accommodations at the house. See Exhibit A.

Further, Appellee-Applicant has never applied for a permit to conduct a children= s day camp on either property. The children= s day camp program does not fall within the use categories of >campground= or > limited outdoor recreation,= even if the residential children= s camp program can be considered a campground. Moreover, we make no finding here as to whether a conventional residential children= s camp with cabins or tent platforms and outbuildings would fall within the use categories of >campground= or > limited outdoor recreation,= as it is appears to be a more intensive use of the land and may require review as a use similar to a school or a > non-limited= outdoor recreation use. (See the definition of outdoor recreation contrasted with > limited= or low-intensity outdoor recreation in the same definition.) If a day camp or conventional residential children= s camp were to be reviewed under ' 241.9 as a > use not provided for,= the Planning Commission would have to make its ruling under that section before the ZBA could consider that proposal as a conditional use, both of which would have to occur before the matter could be before the Court on appeal. Appellee-Applicant stated at the hearing that she was not proposing to run day camps at the property, to accommodate the neighbors= concerns about the greatly increased traffic caused by parents dropping off and picking up children at the property. However, Appellee-Applicant= s June 12, 2002 memorandum makes clear that she would prefer to be able to rent the property to others for day camp use, but for this objection.

Now we turn to what Appellee-Applicant has applied for in this conditional use application, which is not easily determined as it does not appear in any application for conditional use approval nor in her testimony nor with any specificity in her post-hearing filings. She presented proposed limitations on numbers of participants and numbers of events, but only as > unwarranted and unnecessary restrictions= which she would prefer not to have imposed. From the totality of the evidence and post-hearing memoranda, Appellee-Applicant appears to be proposing to run programs on the 124-acre parcel between the dates of May 1 and October 31 each year, occupying not more than a total of ninety days annually, with a maximum number of fifty participants, including staff. She is willing to abide by a condition, if necessary, limiting the events with a maximum of fifty participants to five events (of indeterminate duration) per year, with the remainder of the ninety days allocated to an indeterminate number of events of indeterminate duration with thirty-five or fewer participants and not more than twenty vehicles.

Appellee-Applicant has proposed that program events involving vocalizing, drumming, or other music will take place in the upper or > far= fields (in the center of the 124-acre parcel), and that no amplified music is proposed. She also has proposed that all > structures,= which she defines as the > sweat lodge and/or tipis,= will be constructed in the upper or > far= fields, as shown on the site plan. However, Appellee-Applicant did not propose a sweat lodge in the site

plan. It is not clear to the Court whether this is proposed as a moveable tipi or wigwam type of structure over a firepit for hot stones on which water can be ladled to produce steam, but a witness stated that it needs to be near a source of water. The site plan does not show a source of water in the area proposed for the three proposed tipis, although a witness stated that there is a stream running through the property and a beaver pond near the area used for farming. Appellee-Applicant has not shown the capacity of the single proposed privy to accommodate potentially fifty overnight guests, and has not received a permit to use the toilets in her house for that purpose. She does not propose any water supply to be installed in the area to be used for the tipi or tent camping.

To grant an application for conditional use approval, the ZBA and hence this Court must find that the proposed conditional use will not adversely affect the seven criteria in ' 141.3(a): the capacity of existing or planned community services or facilities; the character of the area affected; traffic on roads or highways in the vicinity; any land use or land development ordinances in effect in the Town; the intrinsic capability of the land to support the use; the utilization of renewable energy resources; and the area environment.

The proposed conditional use, even to the full extent proposed by Appellee-Applicant, will not adversely affect the capacity of existing or planned community services or facilities or the utilization of renewable energy resources.

The proposed conditional use will not adversely affect other land development ordinances, the intrinsic capability of the land to support the use, and the area environment, only if Appellee-Applicant receives prior approval of the campground= s access to water and sewage disposal in conformance with ' 441(e), including any Town health regulations, for the capacity desired. The Court understands that the single privy at the site has been approved, but that former programs at the camping site have not involved more than twenty people staying overnight. Any necessary additional approval will have to be obtained before running any programs at the site in the 2003 season involving more than twenty people.

The proposed conditional use will not adversely affect the character of the area affected and traffic on roads or highways in the vicinity only if limitations are imposed regulating the number of vehicles passing along Daigel Road due to the proposal to no more than five in any given hour, prohibiting large vehicular campers or recreational vehicles from traversing the road or camping in the lower parking area, limiting any outdoor lighting, and regulating the uses to which the barn structure may be put, due to the location of the barn at the head of a natural acoustic amphitheater.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Conditional Use Approval is hereby GRANTED to Appellee-Applicant to use the 124-acre parcel as a tent campground and limited outdoor recreational use in connection with the adult programs provided by Soul Support Systems, Inc. and the children= s residential camp program provided as EarthQuest, subject to the following conditions necessary to implement the purposes of the Westminster Zoning Ordinance:

1. Appellee-Applicant may conduct the programs during a maximum of ninety days within the period from May 1 through Oct 31 annually, and shall not conduct any program events concurrently without approval of an amendment to this approval. If Appellee-Applicant wishes to allow participants or staff to arrive on April 30 in preparation for a program beginning on May 1, or to leave on November 1, after a program concluding late on October 31, those dates are also hereby approved to avoid confusion, conflict with neighbors, or the need for an amendment for those purposes. Appellee-Applicant may conduct the programs during the hours of 7:00 a.m. to 11:00 p.m. daily, except that a single earlier vehicle departure or later vehicle arrival is allowed if necessary due to airport transportation schedules. Appellee-Applicant shall advise Appellant and the other neighbors who were parties to this appeal in advance of any such vehicle trips, if

scheduled and not due to an emergency, by the means of Appellants= choice (e.g., by mail, telephone or email).

2. Appellee-Applicant is authorized by this approval to provide tent (including tipi) camping only, and only in the three tipis or any participants= tents within the camping area shown on the site plan. No vehicular camping in travel trailers or recreational vehicles is allowed, and in particular no camping of any type on the 10.6-acre house lot or in the parking areas near the turnaround or barn, and no overnight accommodations in the barn. Any exterior lighting to be installed on or near the barn or parking area shall be shielded or directed away from the neighbors, and shall be installed with a motion detector to minimize the time it must be on, consistent with the safety of the participants.

3. Appellee-Applicant is authorized to place only the three provided tipis and the single privy at the campground site as shown on the site plan. Any additional structures or waste disposal facilities must obtain an amendment of the site plan and this approval. No exterior lighting shall be installed in the upper or > far= fields in or near the camping area.

4. Appellee-Applicant shall apply for and receive prior approval of the campground= s access to water and sewage disposal in conformance with ' 441(e), including any Town health regulations, for the capacity desired. Appellee-Applicant may apply for water and sewage approval for a greater capacity than now authorized by this approval, in anticipation of making a future application to the Planning Commission and ZBA to increase that capacity. Until obtaining approval of additional capacity at the camping area or in the house, Appellant shall limit each event to no more than 20 participants including staff (exclusive of the residents of the house). Upon obtaining approval of additional sewage disposal capacity at the campground or in the house, Appellant may increase the size of each event to no more than 35 participants including staff (exclusive of the residents of the house). Approval of events involving up to fifty participants including staff will have to be the subject of a future amendment application, upon a showing of arrangements for an off-site parking area and a shuttle vehicle to the property. (See Condition 6, below).

5. Appellee-Applicant shall not conduct program uses involving drumming, music, or loud vocalization in or near the barn or parking area. After the barn is entirely enclosed, Appellee-Applicant may apply to the ZBA for an amendment of this condition upon a showing that the activities can be sufficiently enclosed or shielded from the neighbors so as not to adversely affect the conditional use criteria.

6. Appellee-Applicant shall limit the number of vehicles on the property in connection with the programs to no more than 20 vehicles, and shall provide adequate parking for those vehicles. Appellee-Applicant is applauded for encouraging participants to car pool. However, so that the use will not adversely affect the traffic on Daigel Road, Appellee-Applicant shall limit the total number of (one-way) vehicle trips by program participants or non-resident staff to no more than five vehicle trips (either onto or leaving the property) in any hour. To achieve this result for events involving larger numbers of participants, Appellee-Applicant is encouraged to arrange for an off-site car parking area[12] in a suitable location closer to Route 5 or I-89, such as at a commuter parking lot, a commercial business, or a school or other institution, and to provide for a shuttle van to the property at least once in the early morning and from the property at least once in the late evening, operated by a staff member familiar with the conditions of Daigel Road. Please note that such an arrangement might be required by the ZBA or by this Court for approval of any larger number of participants in any future application.

Please be advised that this conditional use approval applies to Appellee-Applicant= s conditional use application and not to any personal or family use she may make of her house or the 10.6-acre house property. This approval is without prejudice to any future application that may be made to amend this approval to increase the maximum numbers of participants, or the

maximum numbers of event days, or the calendar dates within which events may take place, or to allow concurrent events, or to use the house or the barn for overnight accommodations or for toilet or shower use in connection with the programs described above, or to use the property for children= s day camping use, or to alter any other aspect of the proposed uses. Any such amendment application, if appealed, would become the subject of a new appeal under a new docket number.

Dated at Barre, Vermont, this 27th day of December, 2002.

_____

Merideth Wright
Environmental Judge

---

**Footnotes**

[1]   As appears in the first full paragraph on (unnumbered) page 4 of Appellee-Applicant's June 21, 2002 memorandum, she has not understood that the proceedings before the Court are de novo, where the Court is sitting in place of the ZBA to rule on Appellee-Applicant's application for conditional use approval, although this aspect of the appeal was explained both in the pre-trial proceedings and during the trial itself. The Court must be satisfied that all the criteria for conditional use approval raised in the Statement of Questions are met for this application, before it can be approved.

[2]   Appellee-Applicant's promotional materials (Exhibit A) describe the land as 200 acres and her June 21, 2002 filing describes it as 200 acres in three contiguous parcels. However, no additional property other than the 124-acre parcel containing the barn, and the 10.6-acre parcel containing the house, has been presented to the Court in connection with this appeal.

[3]   At the time of the hearing and site visit in this matter, the barn structure had not been completely enclosed, but was in the process of being enclosed with windows and doors. Appellant proposes wholly to enclose the barn structure by the end of the 2003 operating season.

[4]   Some of the neighbors' properties have more than one driveway, for example, leading to a house and to a barn.

[5]   The spiritual or educational subject matter or content of these programs has no significance to the zoning decisions to be made in this appeal, though that content is significant to Appellee-Applicant and the participants in the programs. That is, the philosophy or content of what is taught or discovered during the programs makes no difference to the categorization of the proposed uses of this property as 'campground' or 'limited outdoor recreation' or some other zoning use category.

[6]   Appellee-Applicant has also hosted larger neighborhood gatherings at her house, but not in connection with the programs at issue in the present appeal.

[7]   Appellee-Applicant also stated at the trial her interest in extending the time frame for these events into the winter months. Any winter use of either property is not before the Court in the present application. Any proposal for use of the existing facilities in the winter months, and any proposal to build any additional structures, would have to be a new application. We note in this

regard that the traffic and roadway evidence distinguished between the winter months and the remainder of the year.

[8]   We note that the site plan approval only covered a camping area of three tipis and one privy. If Appellee-Applicant now proposes to increase the number of tipis or the space to accommodate participants' personal tents, or to construct any additional structures, such as the 'sweat lodge' referred to by Appellee-Applicant in her June 21, 2002 memorandum, she may have to apply to the Planning Commission for an amendment of her site plan approval.

[9]   This is not a finding regarding the effect of these vehicles on the road surface, but is a finding regarding the effect of these vehicles on the safety of pedestrians, farm animals and other vehicles using Daigel Road.

[10]   The privy may also require approval under the Town's waste disposal regulations.

[11]   Under §241.9, any 'use not provided for' first must go before the PC for a finding that the use is of the same general character as those allowed within the district and that the proposed use will not be detrimental to the other uses within the district or to the adjoining land uses.

[12]   And specifically not along the verge of Pine Banks Road.